Filed 11/7/23 In re J.V. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re J.V., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>J.V.,<br><br>    Defendant and Appellant. | A167732<br><br>(Contra Costa County<br>Super. Ct. No. J2200477) |

After J.V. (minor) was adjudicated a ward of the juvenile court under Welfare and Institutions Code section 602[1] for felony grand theft, the court imposed several conditions, including restitution to the victim's mother in the amount of $1,314.63. The court also determined minor was jointly and severally liable for this amount with his co-responsibles.

His appellate counsel has raised no issues and asks this court for an independent review of the record to determine whether there are any issues that would, if resolved favorably to minor, result in reversal or modification of the judgment. (*People v. Kelly* (2006) 40 Cal.4th 106; *People v. Wende* (1979) 25 Cal.3d 436.) Minor was notified of his right to file a supplemental

---

    [1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

1

brief but has not done so.  Upon independent review of the record, we conclude no arguable issues are presented for review, and affirm.

## BACKGROUND

Sixteen-year-old A.V. was walking home from school, when he "was suddenly struck in the back of the head by a hard object."  When he turned around, he saw minor, and two others—J.T. and R.S.  J.T., was "holding a Glock, with an extended magazine, in his right hand."  J.T. "racked the slide," and R.S. "ran up to the victim and threatened him, and ripped a gold necklace . . . from his neck."  When the victim started to walk toward R.S. to retrieve his necklace, minor stated, " 'Do something.' "  "Afraid for his safety," the victim did not do anything further.  Minor and R.S. then ran toward a vehicle, while J.T. walked backward holding the firearm by his side.  The victim heard someone inside the vehicle say, " 'Shoot him!' " but after J.T. got into the vehicle, he drove away.

The victim called the Richmond Police Department.  When police arrived at the scene, they photographed "a visible red lump on the back of the victim's head" and retrieved nearby surveillance footage, which captured the "entire robbery."  The police discovered the vehicle driven by J.T. was registered to minor's father.  Police officers located minor near his home, and when they contacted him, minor gave officers a false name.  Police arrested minor for felony robbery and conspiracy.  The next day, the police contacted J.T. and searched his room.  That search revealed an "unregistered black semi-automatic Glock-style handgun commonly referred to as a 'ghost gun.' "  Further investigation of another surveillance video showed minor, J.T., R.S., and another individual "attempting to sell the victim's necklace" at a store "on the same day as the offense."  The clothing worn by J.T., R.S., and minor

2

in that video "matched the suspects' clothing description." The police also arrested R.S.

The Contra Costa County District Attorney filed a section 602 petition alleging one count of felony second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c)). At the jurisdiction hearing, the juvenile court granted the People's motion to amend the petition to add a felony violation of grand theft (*id.*, § 487, subd. (c)).

Minor entered a waiver of rights and pleaded no contest to count 2 in exchange for a two-year maximum commitment. At the jurisdiction hearing, the court advised minor, who was represented by counsel, of his rights, found there was a factual basis for the plea, sustained the grand theft count, granted the People's motion to dismiss the robbery count, and set the matter for disposition. At the disposition hearing, the court adjudged minor a ward of the court, ordered minor released on home supervision, subject to certain terms and conditions, and set a restitution hearing. The court also found minor, J.T. and R.S. were "jointly and severally liable to pay restitution as ordered by the Court."

In a supplemental restitution report, the Probation Department recommended $1,314.63 in victim restitution to the victim's mother. This amount consisted of: $384 in lost wages, $130.63 in mileage, and $800 for the victim's gold chain.[2]

At the contested hearing on restitution, minor did not challenge whether the victim's mother had indeed incurred the claimed costs, nor did he challenge whether those costs were of the type for which restitution could

---

[2] The victim's mother filled out a victim restitution request form indicating she had missed work on October 14, October 25, October 28, and November 8, 2022. She noted lost wages of $96 per day for a total of $384.

be ordered. Rather, minor presented a "legal" challenge to the portion of the restitution to be awarded for the mother's attendance at hearings minor did not attend. Counsel explained the restitution accounted for four days the victim's mother attended court. On two of those days, minor "did not attend," and counsel believed those days were court dates "for the co-responsible's contest. . . . I'm not sure, but the October 25th court date and November 8th court dates are both court dates in which [minor] had nothing to do with. I believe it's because, again, the co-responsible had gone to contest and the victim's mom had attended to support her son, who I believe testified."

Counsel objected "to the $96 from October 25th, the $96 from November 8th, that's a total of $192. And it looks like the mileage, I'm assuming, is a combination of the four days. So, then I'm also objecting to . . . I think it's about roughly $52 per day, your Honor, so I am contesting about $104 worth of mileage."[3] Counsel asserted minor "accepted responsibility very early on and pled to spare the victim and his family from having to come to court and testify. . . . [¶] . . . [¶] Your Honor, I think it would send the wrong message. I think it would defer [*sic*] him from accepting responsibility early if he has to pay for the future court dates of whatever his co-responsible is setting them for. I think if he has to pay for anything that the co-responsible does post-plea or while the case is resolving, then I think that it sends the wrong message."

In denying minor's challenge, the court went through the statutory provisions allowing for restitution and joint and several liability for that restitution. While the court "acknowledge[d minor's] choice to accept

---

[3] Counsel's calculation was incorrect. The total mileage requested was $130.63 or approximately $32.66 per day and approximately $65.32 for two days.

4

responsibility and plead in his case, the fact remains that there is no carveout in the law that I can find . . . that would excuse him from being jointly and severally liable for all of the foreseeable expenses that a victim may incur as a result of criminal conduct that he engaged in with other people."

**DISCUSSION**

Penal Code section 1237.5 generally precludes an appeal from a judgment of conviction after a plea of no contest or guilty unless the defendant has applied for, and the trial court has granted, a certificate of probable cause. There are two exceptions: (1) a challenge to a search and seizure ruling, as to which an appeal is proper under Penal Code section 1538.5, subdivision (m); and (2) postplea sentencing issues. (*People v. Shelton* (2006) 37 Cal.4th 759, 766; see *People v. Buttram* (2003) 30 Cal.4th 773, 780.) Here, since minor pleaded no contest to the charge, our review is limited to postplea issues. Further, we note in his notice of appeal, minor states he is appealing the restitution amount ordered, specifically "defense objected to 2 days worth of victim's mom's lost wages and mileage" and "Minor pled. Victim's mom lost wages because she attended coresponsible's contest dates, not minor's."

Victim restitution is constitutionally and statutorily mandated in California. (Cal. Const., art. I, § 28, subd. (b).) Section 730.6 provides for victim restitution when a minor described in section 602 causes the victim to incur economic loss as a result of the minor's conduct. (§ 730.6, subd. (a)(1), (a)(2)(b).) Upon finding a minor to be a person described in section 602, the juvenile court must order full restitution—that is, an amount "sufficient to fully reimburse the victim . . . for all determined economic losses [sustained] as a result of the minor's conduct"—unless it finds "compelling or extraordinary reasons" not to do so and states them on the record. (§ 730.6,

5

subd. (h)(1).)  Beyond making the victim whole, restitution also has a deterrent and rehabilitative effect.  (*Luis M. v. Superior Court* (2014) 59 Cal.4th 300, 305 (*Luis M.*).)

The juvenile court is vested with broad discretion in determining the amount of restitution.  (*In re Alexander A.* (2011) 192 Cal.App.4th 847, 853 (*Alexander A.*); *Luis M., supra*, 59 Cal.4th at p. 305.)

" '[W]hile the amount of restitution cannot be arbitrary or capricious' " (*In re Brittany L.* (2002) 99 Cal.App.4th 1381, 1391), our Supreme Court has reiterated the long-standing principle that "[t]here is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action." (*People v. Anderson* (2010) 50 Cal.4th 19, 27; *People v. Carbajal* (1995) 10 Cal.4th 1114, 1121; see *In re S.E.* (2020) 46 Cal.App.5th 795, 805 ["so long as the minor's conduct was a substantial factor in causing the economic loss incurred by the victim or victims, it need not have been the sole cause of that loss"].)  "A restitution order will be upheld on appeal where there is a factual and rational basis for the amount of restitution ordered by the trial court." (*Alexander A., supra*, 192 Cal.App.4th at p. 857; *In re Anthony M.* (2007) 156 Cal.App.4th 1010, 1016 [juvenile court abuses its discretion when it acts contrary to the law or there is no factual and rational basis for the amount of restitution awarded].)

Here, there was such a basis.  As the juvenile court noted, it awarded restitution for the "foreseeable expenses that a victim may incur as a result of criminal conduct that [minor] engaged in with other people.  The [victims] did not pick [J.T.] and [R.S.].  [Minor] did.  And it is completely foreseeable for co-responsibles to be held financially accountable for the losses that they cause.

6

Concluding otherwise could impact a victim or, in this case [the victims']
ability . . . to be made whole."  We therefore conclude the trial court did not
abuse its discretion.

## DISPOSITION

After a review of the relevant record, we find no arguable issues and
affirm the restitution order.

_____

Banke, J.

We concur:

_____

Humes, P.J.

_____

Getty, J.*

**Judge of the Solano County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

A167732 In re JV

8