[No. A124640. First Dist., Div. Three. Jan. 13, 2010.]

THE PEOPLE, Plaintiff and Appellant, v.
TUAN QUONG DUONG, Defendant and Respondent.

1534

**COUNSEL**

Kamala D. Harris, District Attorney, Laura L. Cinema, Assistant District Attorney, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

**OPINION**

**POLLAK, J.**—The district attorney of San Francisco appeals from an order fixing the amount of restitution that defendant Tuan Quong Duong is obligated to pay to the victim of his assault. The victim received medical treatment at Kaiser Hospital, a facility within the Kaiser California North Health Plan (Kaiser), of which the victim was a member. The trial court refused to require restitution of the amount "billed" for the victim's treatment because as a member of Kaiser the victim was not liable to pay any additional amount for those services. Defendant has filed no opposing brief in this court.[1] We conclude that the trial court erred in failing to include in the restitution order the amount that would be accepted as full payment for the medical services to the victim which, however, is less than the amount billed for those services demanded by the district attorney.

### Background

Pursuant to a negotiated disposition, defendant pleaded guilty to two counts of Penal Code[2] section 245, subdivision (a)(1), assault by means of force likely to cause great bodily injury upon two victims, one of whom was Sarah Ruggerio. The court suspended imposition of sentence and placed defendant on probation for three years on conditions that included "out-of-pocket restitution to the victim(s)" in an amount to be subsequently determined.

Many months later the district attorney brought on a motion requesting the court to order "full restitution" to Ruggerio. Defendant did not oppose an

---

[1] The district attorney's notice of appeal was served on both defendant's trial counsel and the First District Appellate Project on March 6, 2009. Through the First District Appellate Project, this court attempted to determine whether defendant wished to request the appointment of counsel on appeal or otherwise to oppose the appeal, but over a period of several months defendant failed to respond to any of these inquiries. The clerk of this court also notified defendant of the pendency of the appeal on two different occasions, and defendant again failed to respond. Defendant's trial counsel did file memoranda in the trial court opposing the district attorney's contentions. This court has reviewed those memoranda in addition to our own research in considering the merits of the appeal.

[2] All statutory references are to the Penal Code unless otherwise indicated.

order requiring restitution for two ambulance bills totaling $1,900 for two separate transportations of Ruggerio to the hospital occasioned by the injuries inflicted on her by defendant. The district attorney requested that the order also include $4,459 to cover the cost of Ruggerio's treatment at Kaiser Hospital, to which defendant objected on the ground that "Ms. Ruggerio was a member of Kaiser at the time. . . . She was never billed for the treatment she received at Kaiser because she was on a plan in which she paid a monthly fee and received unlimited medical care." These facts were undisputed, as was the fact that Kaiser had referred the matter for enforcement of its rights to an entity called "Healthcare Recoveries." The record includes a letter from Healthcare Recoveries to the district attorney's office stating that "Kaiser, Northern California has retained the services of Healthcare Recoveries to act as its agent in the assertion of its rights of subrogation and/or reimbursement for medical services rendered to Kaiser Foundation Health Plan members," and that "[b]illing regarding your claim has been ordered." A subsequent letter from Healthcare Recoveries to the district attorney's office attached a "Consolidated Statement of Benefits" listing the services provided to Ruggerio and stating that the "Total Billed Charges" and "Total Benefits Provided" aggregated $4,459, and that this entire amount remained due and unpaid. The second letter stated, however, that the statement of benefits "may contain capitated charges," and that "At settlement, Kaiser will accept a 20% reduction on all capitated charges . . . unless a compromise is negotiated based on other factors. . . . An additional reduction for attorney fees will also be allowed if the member is represented. With the 20% reduction for capitated charges, the lien amount associated with the attached Consolidated Statement of Benefits is $1538.20."

Accepting defendant's contention that Ruggerio had not incurred any expense for the treatment at Kaiser Hospital, and that Kaiser itself was not a direct victim of defendant's crime and therefore not entitled to receive restitution, the court entered an order requiring defendant to pay restitution to Ruggerio in the sum of $1,900. The district attorney has filed a timely notice of appeal from this order.

## Analysis

Section 1202.4, subdivision (a)(1) provides, "It is the intent of the Legislature that a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime." With certain exceptions not relevant here, "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing

to the court. . . . The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record. . . ." (*Id.*, subd. (f).) "Determination of the amount of restitution ordered pursuant to this subdivision shall not be affected by the indemnification or subrogation rights of any third party. . . ." (*Id.*, subd. (f)(2).) "To the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss·incurred as the result of the defendant's criminal conduct, including . . . [¶] . . . [¶] . . . Medical expenses." (*Id.*, subd. (f)(3)(B); see generally, *People v. Millard* (2009) 175 Cal.App.4th 7, 24–26 [95 Cal.Rptr.3d 751].)

The standard of review of a restitution order is abuse of discretion, but "a restitution order 'resting upon a " 'demonstrable error of law' " constitutes an abuse of the court's discretion.' " (*People v. Millard, supra,* 175 Cal.App.4th at p. 26; see also *In re K.F.* (2009) 173 Cal.App.4th 655, 661 [92 Cal.Rptr.3d 784].)

Only the "direct victim" of a crime is entitled to restitution from the perpetrator of the offense. (*People v. Birkett* (1999) 21 Cal.4th 226 [87 Cal.Rptr.2d 205, 980 P.2d 912].) Commenting on a prior version of the statutory provisions, which in the relevant respects remain substantively unchanged in the current statute, the Supreme Court explained, "the Legislature intended to require a probationary offender, for rehabilitative and deterrent purposes, to make *full* restitution for all losses *his crime had caused, and* that such reparation should go entirely to *the individual or entity the offender had directly wronged*, regardless of that victim's reimbursement from other sources. Only the Restitution Fund was eligible to receive ·any part of the full restitutionary amount otherwise due to the immediate victim." (*Id.* at p. 246, original italics.) Thus, for example, in *Birkett* the court held that restitution could not be awarded to insurers that partially reimbursed the direct victims for their losses, nor could the court divide the full amount of restitution between the victims and their insurers. In *People v. Slattery* (2008) 167 Cal.App.4th 1091 [84 Cal.Rptr.3d 672], the court held that it was error to require a defendant convicted and sentenced to prison for inflicting injury upon an elderly person to pay restitution to a hospital for the cost of medical services it provided to the victim. Citing *Birkett*, the court reasoned, "Diverting the restitution due [the victim] to a third party, such as Marshall Hospital, violates the statute because it fails to make [the victim] whole." (167 Cal.App.4th at p. 1097.) The third party may pursue its civil remedies against either the perpetrator or the victim; the possibility that the victim may receive a windfall because the third party fails to exercise its remedies does not diminish the victim's right to receive restitution of the full amount of

economic loss caused by the perpetrator's offense. (*Ibid.*; *People v. Hove* (1999) 76 Cal.App.4th 1266, 1272–1273 [91 Cal.Rptr.2d 128].)[3]

Here, the district attorney does not contend that the trial court should have ordered defendant to pay restitution directly to Kaiser. The district attorney contends that the restitution that the court ordered defendant to pay to Ruggerio is insufficient because it includes no amount for the medical treatment Ruggerio received at Kaiser Hospital.

In *Hove*, the victim of the defendant's crime (driving under the influence of a controlled substance) received substantial medical treatment, the full cost of which was covered by Medicare and Medi-Cal. Although the court was advised "that there was no monetary loss to the family" because of this coverage, the trial court ordered the defendant to pay victim restitution of the total costs that had been charged to the victim's Medi-Cal claims file. The court, applying the principles stated in *Birkett*, concluded that "the fortuity that the victim here was over age 65, and thus covered by Medicare, should not shield defendant from a restitution order which requires him to pay the full amount of the losses caused by his crime. Nor should the payment of medical bills by Medi-Cal allow defendant to escape responsibility for the losses he caused. [Fn. omitted.] As *Birkett* notes, the Legislature could rationally conclude that defendant should bear the burden of the medical costs of his victim, rather than society generally. [Citation.] [¶] We therefore find the restitution order proper even though the victim had no direct economic losses, and even though the victim could conceivably profit from recovering restitution if defendant complies with the restitution order and if Medicare and/or Medi-Cal does not pursue reimbursement." (*People v. Hove, supra*, 76 Cal.App.4th at pp. 1272–1273.) Similarly, in *K.F.*, under the comparable restitution provisions in Welfare and Institutions Code section 730.6, restitution to the victim of an assault was ordered for the amount of medical services rendered the victim by Kaiser, based upon a "Consolidated Statement of Benefits" similar to that included in the present record. In affirming this order, the appellate court "acknowledge[d] some uncertainty arising from the well-known status of Kaiser Hospitals as a health maintenance organization providing medical services to its members rather than a medical service provider with a conventional creditor-debtor relationship to its patients." (*In re K.F., supra*, 173 Cal.App.4th at pp. 663–664.) However, the court concluded that the statement of benefits "reflects 'billed charges' of the specified amount. It therefore constitutes substantial evidence that these charges were 'incurred' by the victim. Assuming it was not itself a bill, as

---

[3] Our Supreme Court has granted review in a more recent case to determine whether a trial court erred in holding that a hospital that treated the victim of a hit-and-run offense was a direct victim of the offense and in awarding restitution to the hospital. (*People v. Anderson*, review granted Apr. 29, 2009, S170778.)

defendant asserts, it was nonetheless evidence of billing. It could be reasonably viewed by the trial court as evidence that the victim had been billed for the amount stated." (*Id.* at p. 663; see also *In re Anthony M.* (2007) 156 Cal.App.4th 1010, 1018, fn. 5 [67 Cal.Rptr.3d 734].)

■ Consistent with these authorities, we conclude that the trial court here erred in failing to include any amount to cover the cost of medical services that Ruggerio received at Kaiser Hospital. Section 1202.4, subdivision (f)(3) provides that to the extent possible, the restitution order "*shall* be of a dollar amount that is sufficient to *fully* reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including" medical expenses. (Italics added.) Even though Ruggerio was not obligated to pay any amount above her membership fees in the health plan for the services she received, charges were incurred on her behalf as a result of defendant's criminal conduct. In the absence of "compelling and extraordinary reasons for not doing so" (§ 1202.4, subd. (f)), which the trial court did not find and defendant never suggested, the court is required to order the defendant to pay restitution for those charges. (*People v. Hove, supra,* 76 Cal.App.4th at p. 1270; *In re K.F., supra,* 173 Cal.App.4th at p. 659; *In re Anthony M., supra,* 156 Cal.App.4th at pp. 1016–1017.)

Nonetheless, we disagree with the district attorney that restitution is required in the amount billed by Kaiser, rather than in the amount that the record shows Kaiser will accept as full payment for the services received by Ruggerio. In *People v. Bergin* (2008) 167 Cal.App.4th 1166 [84 Cal.Rptr.3d 700], the trial court ordered the defendant to pay restitution in the amount that the medical providers accepted from the victim's insurer as full payment for their services to the victim, rather than the much larger amount that the providers had billed for those services. In rejecting the People's appeal from that order the appellate court observed: "we can detect no basis for concluding that [the victim] incurred any other economic loss beyond that identified in the trial court's order. The People say [the defendant] must pay restitution in the amount 'actually incurred by [the victim's] medical providers,' but of course the statute says nothing of the sort. Indeed, [the victim's] medical providers agreed with Blue Cross to accept the amounts Blue Cross paid on [the victim's] behalf; neither [the victim] nor her insurer expended more than the trial court ordered to be paid to [the victim] as restitution." (*Id.* at p. 1170.) The same conclusion was reached in *Millard* where the court stated: "To 'fully reimburse' the victim for medical expenses means to reimburse him or her for all out-of-pocket expenses actually paid by the victim or others on the victim's behalf (e.g., the victim's insurance company). The concept of 'reimbursement' of medical expenses generally does not support inclusion of amounts of medical bills in excess of those amounts accepted by medical providers as payment in full." (*People v. Millard, supra,* 175 Cal.App.4th at p. 27; see also *In re Anthony M., supra,* 156 Cal.App.4th at p. 1019.)

In both *Hove* and *K.F.* the restitution orders did include the full amounts billed by the medical providers, but both cases are distinguishable in this respect. In *Hove*, "defendant did not submit any evidence to show that the memorandum prepared by the Medi-Cal carrier was inaccurate or unreliable. He therefore did not provide any factual basis for disregarding the amounts stated in the memorandum." (*People v. Hove, supra*, 76 Cal.App.4th at p. 1275.) Moreover, as several courts have since pointed out, the order in *Hove* was justified by the fact that the victim was expected to receive considerable additional medical treatment for the injuries inflicted by the defendant's offense. The excess of the amount billed for services to the date of the order over the amount accepted by the providers for those services was offset by the amount of medical services it was anticipated the victim would receive in the future. (*Id.* at pp. 1274–1275; *People v. Millard, supra*, 175 Cal.App.4th at p. 28; *People v. Bergin, supra*, 167 Cal.App.4th at pp. 1170–1171; *In re Anthony M., supra*, 156 Cal.App.4th at p. 1019.) In *People v. Bergin* the court added, "*Hove* does not support the proposition that a trial court *must* order restitution in amounts billed by medical providers, regardless of whether the victim or her insurers actually incurred, or might in future incur, those expenses." (167 Cal.App.4th at p. 1171.)

In *K.F.*, the restitution order that was approved was in the full amount billed by Kaiser in the same manner that was done here. However, in that case, as the appellate court observed, the record was "entirely silent" with respect to the amount that Kaiser would accept as full payment for the services it rendered. The court was "left with the uncontested recital in [the Consolidated Statement of Benefits] that the victim was 'billed' for the stated amount." (*In re K.F., supra*, 173 Cal.App.4th at p. 664.) In the present case, the record also includes evidence that the amount of Kaiser's lien for the services rendered Ruggerio, and presumably the amount Kaiser will accept as full payment for those services, is $1,538.20. In the absence of any other evidence on this issue, it appears that any sum in excess of that amount for the services rendered by Kaiser Hospital would exceed the expense that the victim or anyone on her behalf could possibly incur as a result of defendant's offense, and would exceed the amount of restitution authorized by section 1202.4.

Therefore, the trial court abused its discretion in failing to order defendant to pay restitution to Ruggerio for the amount that Kaiser Hospital will accept as full payment for the medical services Ruggerio received at Kaiser Hospital, which the record indicates to be $1,538.20.

## Disposition

The restitution order is vacated and the matter is remanded for the entry of a new order of restitution consistent with this opinion.

McGuiness, P. J., and Siggins, J., concurred.