Filed 3/25/15  In re Ronald F. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re RONALD F., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RONALD F.,<br><br>        Defendant and Appellant. | A141990<br><br>(Contra Costa County<br>Super. Ct. No. J12-01384) |

Appellant Ronald F. appeals after admitting one count of grand theft in a juvenile wardship proceeding.  On appeal, appellant contends that the court's award of $1,138.95 in victim restitution was unlawful because the recipient of the restitution was Contra Costa County Risk Management, which was not a direct victim of his offense.  He further contends that, even assuming the recipient was the direct victim, the court abused its discretion because the victim did not incur any actual losses.  We shall affirm the juvenile court's restitution order.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 18, 2013, a juvenile wardship petition was filed, pursuant to Welfare and Institutions Code section 602, subdivision (a),[1] alleging that appellant, then age 16,

_____

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

had committed robbery pursuant to Penal Code section 211. On October 23, 2013, appellant admitted an allegation of grand theft (Pen. Code, § 487, subd. (c)), and the juvenile court adjudged him a ward of the court and set a maximum term of confinement of three years. At the November 21, 2013 dispositional hearing, the court committed appellant to the Orin Allen Youth Rehabilitation Facility (OAYRF) for six months, with an additional 90-day conditional release/parole period. The court also imposed conditions of probation to be followed upon his release from commitment.

On December 4, 2013, the Contra Costa County Probation Department filed a notice of probation violation, pursuant to section 777, for appellant's involvement in a "physical altercation" at OAYRF. According to the probation report, the altercation involved a fight between appellant and several other minors. When OAYRF employee Stephen Craft intervened, he fell and sustained an injury to the back of his head.

On December 12, 2013, appellant admitted the probation violation and, on December 27, the court extended appellant's placement at OAYRF to 12 months. The court deferred determination of the amount of restitution to "victim Stephen Craft."

On May 20, 2014, at the conclusion of a restitution hearing, the court found appellant and six other minors liable for $1,389.95 in restitution "for Victim Stephen Craft, reimbursable to Contra Costa County Risk Management."

On May 22, 2014, appellant filed a notice of appeal from the restitution order.

## DISCUSSION

Appellant contends (1) the juvenile court's order of $1,138.95 in victim restitution was unlawful because it awarded restitution to Contra Costa County Risk Management, which was not a direct victim of appellant's offense, and (2) even assuming the court did award the restitution directly to victim Stephen Craft, it abused its discretion because Craft did not incur any actual losses.

### I. *Trial Court Background*

In an April 15, 2014 "Restitution Supplemental Report," the probation officer reported that the probation department had identified Stephen Craft as a victim because he was injured during the incident at OAYRF. He was treated for a head injury and,

2

because he sustained the injury while working as a probation counselor for the Contra Costa County Probation Department, the matter had been referred to the Contra Costa County Risk Management Department (Risk Management) for a workers' compensation claim. The probation officer had contacted a claims adjuster from Risk Management, who reported that the total medical bills and fees associated with Craft's injury came to $1,138.95

The probation officer further reported that he had spoken with Craft, who said that he was not seeking any financial restitution for the injury. The probation department recommended that restitution be set at $1,138.95, with appellant jointly and severally liable with five other co-responsible minors, "payable to Contra Costa County Risk Management."

At the May 20, 2014 restitution hearing, defense counsel stated that he did not contest the reasonableness of the amount of the proposed restitution order, but did not believe appellant should be required to pay the restitution because, inter alia, Risk Management, which he described as "sort of the Worker's Compensation/insurance for the County," was not the direct victim of the offense, and Craft did not suffer any financial loss. The court found "the fact that there was insurance coverage is irrelevant," and explained that it was "ordering that the victim is Mr. Craft, but the money is reimbursable through him to Risk Management." It then ordered restitution in the amount of $1,138.95 "for victim Stephen Craft, reimbursable to Contra Costa County Risk Management."[2]

## II. *Legal Analysis*

"Enacted in 1982, Proposition 8, the 'Victims' Bill of Rights,' amended the California Constitution to provide that 'all persons who suffer losses' resulting from crime are entitled to 'restitution from the persons convicted of the crimes causing the losses.' (Cal. Const., art. I, § 28, subd. (b)(13)(A).) In 1983, the Legislature enacted

---

[2] The written restitution order originally listed the victim as Risk Management but, before signing the order, the court added the words, "Stephen Craft, reimbursable to," above the Risk Management notation.

3

Penal Code section 1202.4, which requires a full victim restitution order in criminal cases for every determined economic loss unless there are compelling and extraordinary reasons not to do so. [Citation.] In 1994, the Legislature enacted section 730.6 to provide 'parallel restitutionary requirements for juvenile offenders.' [Citation.]" (*Luis M. v. Superior Court* (2014) 59 Cal.4th 300, 304.)

Section 730.6, subdivision (a), provides in relevant part: "It is the intent of the Legislature that a victim of conduct for which a minor is found to be a person described in Section 602 who incurs any economic loss as a result of the minor's conduct shall receive restitution directly from that minor." (§ 730.6, subd. (a)(1).) Subdivision (h) of section 730.6 provides in relevant part: "Restitution . . . shall be imposed in the amount of the losses, as determined. . . . The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record. . . . A restitution order . . . shall be of a dollar amount sufficient to fully reimburse the victim or victims for all determined economic losses incurred as the result of the minor's conduct for which the minor was found to be a person described in Section 602, including all of the following: [¶] . . . [¶] (B) Medical expenses." (§ 730.6, subd. (h)(1).)

" ' "In keeping with the [voters'] 'unequivocal intention' that victim restitution be made, statutory provisions implementing the constitutional directive have been broadly and liberally construed." ' [Citations.]" (*In re Luis M.*, *supra*, 59 Cal.4th at p. 305.) "An order of direct victim restitution acts to make the victim whole, rehabilitate the minor, and deter future delinquent behavior. [Citation.]" (*Ibid.*; accord, *In re Anthony S.* (2014) 227 Cal.App.4th 1352, 1357.)

Restitution awards are generally vested in the trial court's discretion, although we review an issue of law independently. (*In re K.F.* (2009) 173 Cal.App.4th 655, 661.)

## A.

Appellant first contends the victim restitution order was unlawful because the juvenile court improperly awarded restitution to a governmental entity and/or an insurance company, i.e., Risk Management, rather than to the direct victim, Stephen Craft.

4

Appellant relies on *People v. Birkett* (1999) 21 Cal.4th 226, 228-229 (*Birkett*), in which the California Supreme Court addressed whether the 1994 version of the adult restitution statute, Penal Code section 1203.4 (now Pen. Code, § 1202.4), gave insurers a right to restitution of any amount they had paid to reimburse their policy-holders for crime-related losses. The court concluded, based on the statutory language, that restitution "should go entirely to *the individual or entity the offender had directly wronged*, regardless of the victim's reimbursement from other sources." (*Birkett*, at p. 246.)

This case, however, does not involve a situation in which the juvenile court awarded restitution to someone other than the direct victim. Both the record and the restitution order itself make clear that, following the discussion at the restitution hearing, the court added Craft to the order as the direct victim and recipient of restitution, with the caveat that the restitution received was reimbursable to Risk Management, which had already paid Craft's medical bills. (See pt. I., *ante*.) Although perhaps inartfully worded due to the court's stated concern that Risk Management be reimbursed for its medical payments on behalf of Craft, the restitution award *was* made to the direct victim of appellant's conduct—Stephen Craft—and not to a governmental entity or insurance company. (Compare *Birkett*, *supra*, 21 Cal.4th at p. 246; *People v. Franco* (1993) 19 Cal.App.4th 175, 185 [defendant convicted of assaulting police officer could not be ordered to pay restitution to city for workers' compensation benefits it had paid to injured officer].)

The restitution order in this case is not contrary to law. (See *In re K.F.*, *supra*, 173 Cal.App.4th at p. 661.)

**B.**

Appellant further contends the juvenile court abused its discretion when it awarded restitution to Craft because Craft did not incur any actual losses.

As previously discussed in part II., A., *ante*, our Supreme Court concluded, after analyzing the language of former Penal Code section 1203.4, "that the Legislature intended to require a probationary offender, for rehabilitative and deterrent purposes, to

make *full* restitution for all losses *his crime had caused, and* that such reparation should go entirely to *the individual or entity the offender had directly wronged*, regardless of that victim's reimbursement from other sources." (*Birkett*, *supra*, 21 Cal.4th at p. 246.) Subsequently, in *In re Brittany L.* (2002) 99 Cal.App.4th 1381, 1389, the appellate court found that the principles announced in *Birkett* were applicable "to the virtually identical provisions of section 730.6 regarding restitution orders imposed against minors." The court therefore concluded that the victims "were entitled to a restitution order in an amount sufficient to 'fully reimburse' them for losses incurred as a result of appellant's criminal conduct—without regard to potential reimbursement from their homeowners' insurance carrier. A proper order thus would have included all proven losses they sustained, whether or not first submitted to their insurance carrier, and whether or not already reimbursed by their insurer." (*In re Brittany L.*, at p. 1389; accord, *People v. Vasquez* (2010) 190 Cal.App.4th 1126, 1133-1134 ["Payments received by a crime victim from his or her insurance company or from an independent third party for economic losses suffered as a result of the defendant's criminal conduct cannot reduce the amount of restitution the defendant owes"].)

The court in *In re Brittany L.* discussed the policy reasons for not excusing a juvenile offender from paying restitution where the victim has been reimbursed by an insurance company: "The purpose behind requiring a minor to pay victim restitution is for its deterrent as well as rehabilitative effect. 'Requiring the [minor] to make complete reparation to her victims for the harm done to them is more likely to make an impression on the [minor] than simply imposing a statutory fine. [Citation.]' These purposes would be thwarted if a minor was relieved from responsibility for making her victims whole simply because the victims had been farsighted enough to purchase insurance for this type of damage . . . . Moreover, the principles announced by our Supreme Court in *People v. Birkett* make clear, trial courts are not to consider whether the victim has been, or will be, reimbursed from third parties in ordering victim restitution." (*In re Brittany L.*, *supra*, 99 Cal.App.4th at pp. 1387-1388, fns. omitted; accord, e.g., *In re Anthony S.*, *supra*, 227 Cal.App.4th at p. 1360 [fortuity that victim was indigent and hospital had

6

written off charges for his medical care as an unpaid debt did not shield minor from obligation of paying restitution]; *In re Eric S.* (2010 ) 183 Cal.App.4th 1560, 1565 [even assuming victim who was a Kaiser member was not obligated to pay Kaiser any amount above his membership fee, "charges were nonetheless incurred on his behalf as a result of appellant's criminal conduct"].)

Likewise, in the present case, Craft is entitled to restitution despite the fact that Risk Management has already paid his medical expenses. Under section 730.6, appellant is required to "fully reimburse" Craft "for all determined economic losses incurred as the result of [appellant's] conduct" (§ 730.6, subd. (h)(1)), regardless of his "reimbursement from other sources." (*Birkett*, *supra*, 21 Cal.4th at p. 246.) That Craft himself did not request restitution is immaterial since a victim cannot free a defendant from his or her victim restitution obligation. (Cf. *In re Tommy A.* (2005) 131 Cal.App.4th 1580, 1590-1591 [" '[a] restitution order [under section 730.6, subd. (a)(1)] pursuant to a [juvenile offender's admission] is an agreement between [the juvenile offender] and the state,' and thus a release of liability by the victim, who is not a party to the agreement, 'cannot act to release [the juvenile] from his financial debt to the state' as a matter of law"].)

Appellant nonetheless argues that an award of restitution was unwarranted in this case because there is no evidence that Risk Management has sought or will seek reimbursement from Craft. He cites *In re K.F.*, *supra*, 173 Cal.App.4th 655, 663, in which the appellate court discussed what it means for a victim to have "incurred" an economic loss for purposes of section 730.6: "To 'incur' is 'to become liable or subject to: bring down upon oneself.' (Meriam-Webster's Collegiate Dict. (10th ed. 1999) p. 590.) To constitute evidence of a 'loss incurred,' there must be some basis to conclude that the victim is 'liable or subject to' a charge. Where collection of the charge is barred by law, the victim is not liable or subject to it, and the charge is not 'incurred.' " The court found that no such legal bar to recovery appeared in that case, although it did conclude that the juvenile court should not have ordered restitution for ambulance service rendered by the Kaiser health maintenance organization because the evidence in the

7

record reflected that Kaiser had not billed the victim for that expense. (*In re K.F.,* at pp. 663-664.)

Here, appellant points to no evidence in the record showing that Craft will not be required to reimburse Risk Management for the medical payments it made on his behalf pursuant to his workers' compensation coverage, either because reimbursement is "barred by law" or because Risk Management has made clear that it will not seek reimbursement for such payments. Affirmative evidence that Risk Management intends to obtain reimbursement from Craft is not required for us to uphold the restitution order. (See, *Birkett, supra,* 21 Cal.4th at p. 246; accord, *People v. Duong* (2010) 180 Cal.App.4th 1533, 1537-1538 ["third party may pursue its civil remedies against either the perpetrator or the victim; the possibility that the victim may receive a windfall because the third party fails to exercise its civil remedies does not diminish the victim's right to receive restitution of the full amount of economic loss caused by the perpetrator's offense"]; *People v. Hove* (1999) 76 Cal.App.4th 1266, 1272-1273 [finding restitution order proper despite fact that "the victim had no direct economic losses, and even though the victim could conceivably profit from recovering restitution if defendant complies with the restitution order and if Medicare and/or Medic-Cal does not pursue reimbursement"].)

There was no abuse of discretion. (See *In re K.F., supra,* 173 Cal.App.4th at p. 661.)

## DISPOSITION

The juvenile court's restitution order is affirmed.

_____
Kline, P.J.

We concur:


_____
Stewart, J.


_____
Miller, J.